1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANTHONY A. SANCHEZ,

          Plaintiff,

   v.

MARINA MURO, et al.,

          Defendants.

Case No. 1:21-cv-01770-EPG (PC)

FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION PROCEED ON PLAINTIFF'S EIGHTH AMENDMENT EXCESSIVE FORCE CLAIM AGAINST DEFENDANTS NUNEZ-RUIZ, CALVO, JOHN DOE 3, AND JANE DOE 4; PLAINTIFF'S EIGHTH AMENDMENT FAILURE TO PROTECT CLAIM AGAINST DEFENDANTS NUNEZ-RUIZ AND JOHN DOE 3; AND PLAINTIFF'S CLAIM FOR UNWANTED MEDICAL TREATMENT IN VIOLATION OF THE FOURTEENTH AMENDMENT AGAINST DEFENDANT JANE DOE 4; AND THAT ALL OTHER CLAIMS BE DISMISSED

(ECF No. 18)

OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS

ORDER DIRECTING CLERK TO ASSIGN DISTRICT JUDGE

     Anthony A. Sanchez ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff filed the

1

1  complaint commencing this action on December 16, 2021.  (ECF No. 1).

2        On March 21, 2022, the Court screened Plaintiff's complaint.  (ECF No. 11).  The Court

3  gave Plaintiff thirty days to either: "a. File a First Amended Complaint that is **no longer than**

4  **twenty pages (including exhibits)**….; or b. Notify the Court in writing that he wants to stand

5  on his complaint."  (Id. at 18).  After being granted an extension of time (ECF No. 16), Plaintiff

6  filed a First Amended Complaint on May 16, 2022 (ECF No. 18), which is now before this

7  Court for screening.

8        The Court has reviewed the First Amended Complaint.  Plaintiff generally alleges that

9  defendants Nunez-Ruiz, Calvo, John Doe 3 (a Correctional Officer), and Jane Doe 4 (a Nurse)

10  used excessive force, including placing and/or leaving Plaintiff in unduly tight handcuffs, that

11  defendant Jane Doe 4 provided unwanted medical treatment, and that defendant Keyfauver

12  failed to properly process his 602 appeals.[1]

13        For the reasons described below, the Court will recommend that this action proceed on

14  the following claims: Plaintiff's Eighth Amendment excessive force claim against defendants

15  Nunez-Ruiz, Calvo, John Doe 3 (a Correctional Officer), and Jane Doe 4 (a Nurse); Plaintiff's

16  Eighth Amendment failure to protect claim against defendants Nunez-Ruiz and John Doe 3 (a

17  Correctional Officer); and Plaintiff's claim for unwanted medical treatment in violation of the

18  Fourteenth Amendment against defendant Jane Doe 4 (a Nurse).[2]  The Court will also

19  recommend that all other claims be dismissed.

20        Plaintiff has twenty-one days from the date of service of these findings and

21  recommendations to file his objections.

22  \\\

23  \\\

24

25

26      [1] 602s are also referred to as grievances.

    [2] Plaintiff is advised that the Doe defendants cannot be served until Plaintiff has identified them and filed a motion to substitute, or amended his complaint to substitute, the named defendants in place of the Doe

27  defendants.  For service to be successful, the Court and/or the United States Marshal must be able to identify and locate the defendant to be served.  Plaintiff will be required to identify the Doe defendants as the litigation

28  proceeds.  The Court notes that, once discovery opens, Plaintiff will be given the opportunity to seek information to identify the Doe defendants.

## I.       SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). As Plaintiff is proceeding *in forma pauperis* (ECF No. 9), the Court may also screen the complaint under 28 U.S.C. § 1915. "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II.      SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

At times, Plaintiff's complaint is difficult to understand. What follows is the Court's best understanding of Plaintiff's factual allegations.

3

Plaintiff sues five defendants: J. Nunez-Ruiz, a Correctional Officer; Calvo, a Correctional Officer; John Doe 3, a Correctional Officer; Jane Doe 4, a Nurse; and B. Keyfauver, an Appeals Coordinator.

Plaintiff alleges as follows:

On January 12, 2021, Plaintiff was transferred to Wasco State Prison-Reception Center ("WSP-RC") for a court hearing that derived from a fight with Correctional Officer Mark Gonzalez that occurred on November 13, 2017.  Plaintiff had been going back and forth for court since 2018.  Many correctional officers knew about the incident/case, but this time Plaintiff was housed in General Population and not in the Administrative Segregation Unit ("ASU").

On January 23, 2021, at breakfast, Plaintiff was confronted by the alleged victim, M. Gonzalez.  M. Gonzalez said, "what's up" to Plaintiff and laughed.  He then said, "I can[']t wait to testify."  He then challenged Plaintiff, saying "what you going to do now[?]"

Plaintiff immediately returned to his cell, and then he came back out to throw away trash.  He did not see M. Gonzalez.  However, he prepared a 602 appeal and witnessed it dropped in the appeal box the following day by Correctional Officer Muro, who at the time was escorting Plaintiff to the ASU.  Correctional Officer Muro was present on November 13, 2017, along with many other correctional officers who kicked, stomped, hit, and battered Plaintiff. Plaintiff still has flashbacks of the incident.

On the way to the ASU, Correctional Officer Muro told Plaintiff, "you know all my co-workers know what you did and I'm doing you a favor putting you in ASU."

A correctional captain released Plaintiff from ASU the following day, stating "you shouldn't be here long anyway."

Plaintiff wanted to be sure his 602 appeal was processed, so he submitted a CDCR-22 Form (Inmate Request for Interview) to defendant Keyfauver.  Defendant Keyfauver's assistant came and spoke with Plaintiff right after Plaintiff was moved out of the Quarantine Building to B-6.  Plaintiff spoke with the assistant about his fear of retaliation and how he wanted to make sure his 602 appeal was processed.  She assured Plaintiff that it would be, as long as she was

working, but she was not working on the day that Correctional Officer Muro took Plaintiff to ASU. Also, she had mentioned that her last day was Friday.

In between the time of talking to the assistant and May 6, 2021, Plaintiff submitted three 602 appeals and never received a receipt that they were processed.

Plaintiff is not able to file/submit a 602 appeal like other inmates.

Plaintiff sent one 602 appeal to Sacramento. That appeal was processed as "Staff Misconduct" on March 10, 2021.

On April 24, 2021, Plaintiff was moved to D-Yard Building 5. The day before, Plaintiff submitted a 602 appeal through the mail. He asked to receive a receipt, and Correctional Officer Ramirez said he would sign it the following day. The 602 appeal was never processed, and the CDCR-22 was not signed by Correctional Officer Ramirez.

Correctional Officer Perez and defendant Nunez-Ruiz welcomed Plaintiff to D-5 upon his arrival, and they stated that they are the regular correctional officers five days of the week.

On April 26, 2021, Plaintiff attempted to mail a 602 appeal to Sacramento. However, Correctional Officer Perez was hesitant, and told Plaintiff to wait for defendant Nunez-Ruiz. The appeal was on deliberate indifference, and it was never processed.

Defendant Keyfauver is responsible for processing inmate 602 appeals, and he never responds to any CDCR-22s that Plaintiff submits.

On May 6, 2021, defendant Nunez-Ruiz and Correctional Officer John Doe 1 decided to search Plaintiff's cell. At around 8:30 p.m., Plaintiff and his cellmate were instructed to step out of the cell and fully comply. About five minutes later they were allowed to return. As Plaintiff was walking towards his cell, Correctional Officer John Doe 1 and defendant Nunez-Ruiz confronted Plaintiff. Correctional Officer John Doe 1 asked Plaintiff to have a seat, and Plaintiff responded, "what[']s this all about[?]" Correctional Officer John Doe 1 then said, "your [sic] not looking too good" and hit his alarm.

Plaintiff was nervous and frightened because he was battered before. Moments later numerous staff arrived at D-5.

Defendants Nunez-Ruiz, Calvo, and John Doe 3 responded to the alarm (defendant

Calvo was present when Plaintiff was battered on November 13, 2017).  These three officers surrounded Plaintiff as defendant Jane Doe 4 started to ask Plaintiff questions.  There were about 3-4 correctional officers and 2-3 medical staff present.  Additionally, all inmates in D-5 looked outside toward Plaintiff.

Defendant Jane Doe 4 took Plaintiff's vitals.  Plaintiff attempted to return to his cell, and he said "I'm good" more than once.  However, defendant Jane Doe 4 was persistent even after Plaintiff's refusal and tried to put "something" in or over Plaintiff's mouth.  Plaintiff moved his head backward but still "received it."  For comfort Plaintiff attempted to adjust it and lifted his hand up to grab it.

At this time, defendant John Doe 3 grabbed Plaintiff's hand and twisted his arm and wrist.  Then defendant Nunez-Ruiz or Calvo grabbed Plaintiff's other arm.  One of these defendants slammed Plaintiff's face on the table.  Plaintiff was handcuffed to the tightest capacity, with his wrist bent and in pain.

Plaintiff was fully compliant.  He stood up and was directed to another table by medical staff.  Plaintiff, in pain, yelled "what the fuck" and sat on the orange board.  Defendant Jane Doe 4 said "he has to lay down," and defendants Nunez-Ruiz, Calvo, and John Doe 3 forced Plaintiff to lay on his handcuffed hands.  Plaintiff yelled "my hands," but he was ignored.  All the straps on the orange board were pulled tightly and Plaintiff was fully subdued.

Plaintiff was escorted out of the building.  Plaintiff told staff, "I can't feel my hands, what the fuck."  The correctional officer defendants laughed.  Plaintiff yelled at them that they were treating him like an animal.

At CTC Plaintiff only saw defendants Nunez-Ruiz, Calvo, and John Doe 3.  While Plaintiff was being escorted one of the medical staff covered Plaintiff's mouth with something, making it hard to breathe.

Plaintiff saw nurse Tomchat, who asked Plaintiff if he remembered her (she pushed the gurney that Plaintiff was on on November 13, 2017).

Plaintiff was on the board for around forty-five minutes when he was given an ultimatum.  A correctional officer told Plaintiff, "look if you want these cuffs loosened just go

to the hospital and get cleared." Plaintiff agreed.

Plaintiff was taken to the hospital in Delano and was cleared. While there, Plaintiff mentioned to one of the correctional officers that he was not able to feel his left hand. The correctional officer said, "do you want to be here all night[?] [I]t'll probably go away tomorrow." Plaintiff did not mention his hand to hospital staff.

The following morning Plaintiff still could not feel his left hand. Plaintiff had a lot of pain in his wrists, and he saw bruising on his arms. Plaintiff prepared a 602 appeal on excessive force and deliberate indifference, but he did not submit it.

On May 7 or 8, 2021, Plaintiff submitted a medical request regarding his hand. On May 10, 2021, Plaintiff was called to medical. He told Nurse Montes what happened. Plaintiff also asked why defendant Jane Doe 4 reacted the way she did, and he was told it was out of precaution. He also asked whether handcuffs are usually taken off when an inmate is put on an orange board, and she told him that they usually are.

On May 17, 2021, defendant Keyfauver, along with his assistant, came to talk to Plaintiff about his letter to internal affairs. Defendant Keyfauver told Plaintiff that "we're not throwing away your appeals." Plaintiff told defendant Keyfauver that he has logged when his 602 appeals and Form 22s were submitted, that this is retaliation, and that someone will be held accountable.

Defendant Keyfauver told Plaintiff that if he has any appeals he wants to turn in, he can do it now, right to defendant Keyfauver. The next day Plaintiff turned in his 602 appeal regarding excessive force and deliberate indifference. The appeal was processed and denied.

Plaintiff also asked defendant Keyfauver who has a key to the Appeals Box, and defendant Keyfauver told Plaintiff that it was just him and his assistant. Plaintiff told defendant Keyfauver that he saw an appeal dropped in the box on January 24, but it was never processed.

Plaintiff received a Rules Violation Report for drug paraphernalia, and the allegations were dismissed. Plaintiff believes that "Defendant" submitted the Rules Violation Report to cover-up the injuries Plaintiff received on May 6. Defendant Nunez-Ruiz stated that the search occurred after and was because of "a code 1 medical emergency." The Rules Violation Report

did not mention any use of force.

In disregard of California Code of Regulations Title 15, defendant Calvo and Correctional Officer John Doe 2 served Plaintiff with a copy of the Rules Violation Report. Defendant Calvo insinuated that Plaintiff did not listen and was on drugs on May 6, 2021. While Plaintiff was returning to his cell, he heard defendant Calvo say, "yeah Gonzalez, this happened in 2017 at the end right here in this unit."

Plaintiff alleges there is ongoing retaliation and harassment.  Plaintiff also alleges that if his 602 appeals were properly processed it would deter this type of activity and could have prevented this specific incident.

Plaintiff brings claims against defendant Nunez-Ruiz for excessive force and failure to protect.  Plaintiff also brings a claim against defendant Nunez-Ruiz because he lied on a Rules Violation Report.  Plaintiff also alleges that "this was all unnecessary an[d] unwanted medical treatment initially."  Plaintiff also brings a First Amendment retaliation claim against defendant Nunez-Ruiz.

Plaintiff brings a claim against defendant Calvo for excessive force.  Plaintiff also alleges that defendant Calvo violated Plaintiff's procedural due process rights when he served Plaintiff with the Rules Violation Report.  Plaintiff also brings a First Amendment retaliation claim against defendant Calvo.

Plaintiff brings a claim against defendant John Doe 3 for excessive force and failure to protect.  Plaintiff also brings a First Amendment retaliation claim against John Doe 3.

Plaintiff brings a claim against defendant Jane Doe 4 for violating his due process rights by giving him unwanted medical treatment.  Plaintiff alleges she also inflicted excessive force by forcing things in Plaintiff's mouth and ignoring Plaintiff's pleas of help for his pain.  She also used Narcan on Plaintiff while he was fully subdued.

Plaintiff brings claims against defendant Keyfauver for violating his rights under the First Amendment to freedom of expression, his rights under the Fourteenth Amendment to equal protection, and his rights under Fourteenth Amendment to due process.  Plaintiff also brings a claim alleging that defendant Keyfauver conspired with the correctional officer

defendants to prevent any information regarding the May 6 incident from getting to Sacramento.  Plaintiff also brings an Eighth Amendment failure to protect claim against defendant Keyfauver.

### III.   ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

A. Section 1983

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'"  Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. County of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  Preschooler II v. Clark County Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743).  This standard of

causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  Iqbal, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  See Monell v. Dep't of Soc. Servs. of City of N.Y., 436 U.S. 658, 691, 695 (1978).

Supervisory personnel are not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between the supervisory defendant and the claimed constitutional violation must be specifically alleged.  Iqbal, 556 U.S. at 676-77; Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under section 1983 based on a theory of supervisory liability, a plaintiff must allege some facts that would support a claim that the supervisory defendants either: were personally involved in the alleged deprivation of constitutional rights, Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); "knew of the violations and failed to act to prevent them," Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989); or promulgated or "implement[ed] a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation," Hansen, 885 F.2d at 646 (citations and internal quotation marks omitted).

For instance, a supervisor may be liable for his or her "own culpable action or inaction in the training, supervision, or control of his [or her] subordinates," "his [or her] acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others."  Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (citations, internal quotation marks, and brackets omitted).

\\\

\\\

10

B.  Excessive Force in Violation of the Eighth Amendment

"In its prohibition of 'cruel and unusual punishments,' the Eighth Amendment places restraints on prison officials, who may not … use excessive physical force against prisoners." Farmer v. Brennan, 511 U.S. 825, 832 (1994).  "[W]henever prison officials stand accused of using excessive physical force in violation of the [Eighth Amendment], the core judicial inquiry is … whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

When determining whether the force was excessive, the Court looks to the "extent of injury suffered by an inmate…, the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson, 503 U.S. at 7 (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).  While *de minimis* uses of physical force generally do not implicate the Eighth Amendment, significant injury need not be evident in the context of an excessive force claim, because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated." Hudson, 503 U.S. at 9.

Unduly tight handcuffing can constitute excessive force.  "In general, in cases where tight handcuffing was found to constitute excessive force, the plaintiff was in visible pain, repeatedly asked the defendant to remove or loosen the handcuffs, had pre-existing injuries known to the defendant, or alleged other forms of abusive conduct by the defendant." Reviere v. Phillips, 2014 WL 711002, at *6 (E.D. Cal. Feb. 21, 2014) (citing Shaw v. City of Redondo Beach, 2005 WL 6117549, at *7 (C.D. Cal. Aug. 23, 2005)).

Plaintiff alleges that, on May 6, 2021, after he attempted to adjust something that was put in or over his mouth, John Doe 3 grabbed Plaintiff's hand and twisted his arm and wrist. Then defendant Nunez-Ruiz or Calvo grabbed Plaintiff's other arm.  One of these defendants slammed Plaintiff's face on the table.  Plaintiff was handcuffed to the tightest capacity, with his wrist bent and in pain.

Plaintiff alleges that he complied with orders and sat on the orange board.  However, he

was in pain, and yelled, "what the fuck."  Defendant Jane Doe 4 told Plaintiff that "he has to lay down," and defendants Nunez-Ruiz, Calvo, and John Doe 3 forced Plaintiff to lay on his handcuffed hands.  Plaintiff yelled "my hands," but he was ignored.

Plaintiff was escorted out of the building.  Plaintiff told staff, "I can't feel my hands, what the fuck."  Defendants Nunez-Ruiz, Calvo, and John Doe 3 laughed.

Liberally construing the allegations in Plaintiff's complaint, the Court finds that Plaintiff's excessive force claim against defendants Nunez-Ruiz, Calvo, John Doe 3, and Jane Doe 4 should proceed past screening.

However, to the extent Plaintiff's excessive force claim against Jane Doe 4 is based on providing Plaintiff with medical care (such as putting "something" on or in his mouth), the Court finds that Plaintiff fails to state a claim.  Plaintiff does not sufficiently describe the force that was allegedly used.  Moreover, Plaintiff fails to sufficiently allege that the force was used maliciously and sadistically to cause harm, as opposed to a good faith effort to provide medical care.

### C.  Failure to Protect in Violation of the Eighth Amendment

To establish a failure to protect claim, a prisoner must establish that prison officials were deliberately indifferent to a sufficiently serious threat to the prisoner's safety.  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "'Deliberate indifference' has both subjective and objective components."  Labatad v. Corr. Corp. of Am., 714 F.3d 1155, 1160 (9th Cir. 2013).  A prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate ... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [the official] must also draw the inference."  Farmer, 511 U.S. at 837.  "Liability may follow only if a prison official 'knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it.'"  Labatad, 714 F.3d at 1160 (quoting Farmer, 511 U.S. at 847).

Plaintiff brings a failure to protect claim against defendants Nunez-Ruiz and John Doe 3 based on the May 6, 2021 incident.  As these defendants were present for the excessive force incident described above and witnessed each other's and defendant Calvo's use of force but did

not take any steps to abate the risk to Plaintiff, the Court finds that Plaintiff's failure to protect claim against defendants Nunez-Ruiz and John Doe 3 should proceed past screening.

Plaintiff also brings a failure to protect claim against defendant Keyfauver.  This claim appears to be based on the theory that if defendant Keyfauver had properly processed Plaintiff's 602 appeals, it would have deterred the type of activity that occurred on May 6 and could have prevented the incident.

The Court finds Plaintiff fails to state a failure to protect claim against defendant Keyfauver because his allegations are conclusory.  Plaintiff fails to sufficiently allege that failure to process the 602 appeals subjected Plaintiff to a serious risk of harm.  Notably, while Plaintiff alleges that he submitted 602 appeals prior to the May 6 incident, there are no allegations suggesting that the appeals involved defendants Nunez-Ruiz, Calvo, John Doe 3, or Jane Doe 4.  Moreover, even if the failure to process Plaintiff's 602 appeals did subject Plaintiff to a serious risk of harm, there are no allegations suggesting that defendant Keyfauver was aware of the serious risk of harm.[3]

### D. Retaliation

There are five basic elements to a First Amendment retaliation claim: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted).

"'[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm,' Brodheim, 584 F.3d at 1269, that is 'more than minimal,' Robinson, 408 F.3d at 568 n.11.  That the retaliatory conduct did not chill the plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage.  Id. at 569." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (alteration in original).

---

[3] The Court notes that Plaintiff does not bring a failure to protect claim against defendant Calvo or defendant Jane Doe 4.

1  While prisoners have no freestanding right to a prison grievance process, see Ramirez v.

2  Galaza, 334 F.3d 850, 860 (9th Cir. 2003), "a prisoner's fundamental right of access to the

3  courts hinges on his ability to access the prison grievance system," Bradley v. Hall, 64 F.3d

4  1276, 1279 (9th Cir. 1995), overruled on other grounds by Shaw v. Murphy, 532 U.S. 223, 230

5  n.2 (2001).  Because filing administrative grievances and initiating civil litigation are protected

6  activities, it is impermissible for prison officials to retaliate against prisoners for engaging in

7  these activities.  Rhodes, 408 F.3d at 567.

8  Plaintiff alleges that he filed numerous grievances and that Defendants took adverse

9  actions against him.  However, Plaintiff fails to sufficiently connect the adverse actions to his

10  protected conduct.  There are no allegations, such as anything a defendant did or said, that

11  would suggest he or she acted in retaliation for Plaintiff filing grievances.  Moreover, based on

12  Plaintiff's allegations, at least one defendant may have taken adverse actions against Plaintiff

13  because Plaintiff previously fought with a correctional officer, which is not protected conduct.

14  See, e.g., Marvellous Afrikan Warrior Greene v. Brandon Price, 2018 WL 1413088, at *2 (E.D.

15  Cal. Mar. 21, 2018) ("Plaintiff's allegations thus establish that he was let go from his job

16  because of a fight.  This is not protected conduct and does not establish a retaliation claim in

17  violation of the Constitution."); Garcia v. Nuno, 2015 WL 13738291, at *13 (S.D. Cal. Aug.

18  17, 2015) ("Defendants contend Plaintiff fails to state a retaliation claim because fighting is not

19  protected conduct. This Court agrees.") (citation omitted).

20  Accordingly, the Court finds that Plaintiff fails to state a retaliation claim against any

21  defendant.

22  E.  Unwanted Medical Treatment

23  "[A] competent person has a constitutionally protected liberty interest in refusing

24  unwanted medical treatment…."  Cruzan by Cruzan v. Dir., Mo. Dept. of Health, 497 U.S. 261,

25  278 (1990).  However, "determining that a person has a 'liberty interest' under the Due Process

26  Clause does not end the inquiry; 'whether [a plaintiff's] constitutional rights have been violated

27  must be determined by balancing his liberty interests against the relevant state interests.'"

28  Cruzan, 497 U.S. 261, 279 (1990) (footnote omitted) (quoting Youngberg v. Romeo, 457 U.S.

307, 321 (1982).  Specifically, the Court must consider "the need for the governmental action in question, the relationship between the need and the action, the extent of harm inflicted, and whether the action was taken in good faith or for the purpose of causing harm."  Plumeau v. Sch. Dist. No. 40 County of Yamhill, 130 F.3d 432, 438 (9th Cir. 1997) (citation omitted); see also Jacobson v. Massachusetts, 197 U.S. 11 (1905) (where the Supreme Court balanced an individual's liberty interest in declining an unwanted smallpox vaccine against the State's interest in preventing the disease).  In the prison context, "[p]rison administrators have not only an interest in ensuring the safety of prison staff and administrative personnel, but also the duty to take reasonable measures for the prisoners' own safety."  Washington v. Harper, 494 U.S. 210, 225 (1990) (citation omitted).

Plaintiff brings a claim against defendant Jane Doe 4 for unwanted medical treatment in violation of the Fourteenth Amendment.  Based on Plaintiff's allegations, Plaintiff was coherent and told defendant Jane Doe 4 that he was "good" more than once.  However, defendant Jane Doe 4 was persistent even after Plaintiff's refusal and tried to put something in or over Plaintiff's mouth.  Plaintiff moved his head backward but still "received it."  Plaintiff also alleges that she used Narcan on Plaintiff while he was fully subdued.

Liberally construing Plaintiff's complaint, the Court finds that Plaintiff's claim against defendant Jane Doe 4 for unwanted medical treatment in violation of the Fourteenth Amendment should proceed past screening.

It is not clear, but Plaintiff may also bring this claim against defendant Nunez-Ruiz.  To the extent that he is, the Court finds that the claim fails because Plaintiff fails to sufficiently link defendant Nunez-Ruiz to the alleged constitutional deprivation.  There are no allegations suggesting that defendant Nunez-Ruiz, a correctional officer, provided any medical treatment to Plaintiff or directed Jane Doe 4 to provide any medical treatment to Plaintiff.  Plaintiff also fails to sufficiently allege that defendant Nunez-Ruiz attempted or intended to have Plaintiff provided with unwanted medical treatment.

\\\

\\\

15

F.  <u>Rules Violation Reports and Procedural Due Process</u>

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  The procedural guarantees of the Fifth and Fourteenth Amendments' Due Process Clauses apply only when a constitutionally protected liberty or property interest is at stake.  <u>Ingraham v. Wright</u>, 430 U.S. 651, 672-73 (1977).

The United States Supreme Court, in a case involving a disciplinary proceeding that resulted in a punishment of thirty days in solitary confinement, held that while States may create liberty interests, "these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g., Vitek,* 445 U.S., at 493, 100 S.Ct., at 1263–1264 (transfer to mental hospital), and *Washington,* 494 U.S., at 221–222, 110 S.Ct., at 1036–1037 (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995).  In <u>Sandin</u> the Supreme Court held that neither thirty days in solitary confinement nor issuance of a Rules Violation Report that could be used in parole proceedings were substantial enough deprivations of liberty interests to trigger procedural due process protections.

Even if a liberty interest is at stake, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply."  <u>Wolff</u>, 418 U.S. at 556.  <u>Wolff</u> established five constitutionally mandated procedural requirements for disciplinary proceedings.  First, "written notice of the charges must be given to the disciplinary-action defendant in order to inform him of the charges and to enable him to marshal the facts and prepare a defense."  <u>Id.</u> at 564.  Second, "at least a brief period of time after the notice, no less than 24 hours, should be allowed to the inmate to prepare for the appearance before the [disciplinary committee]."  <u>Id.</u>  Third, "there must be a 'written statement by the factfinders as to the evidence relied on and reasons' for the disciplinary action."  <u>Id.</u> (quoting <u>Morrissey v. Brewer</u>, 408 U.S. 471, 489 (1972)).  Fourth, "the inmate

facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." Id. at 566. And fifth, "[w]here an illiterate inmate is involved [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or … to have adequate substitute aid … from the staff or from a[n] … inmate designated by the staff." Id. at 570.

Plaintiff alleges that defendant Calvo violated Plaintiff's procedural due process rights when he served Plaintiff with the Rules Violation Report. However, Plaintiff fails to sufficiently allege that he had a state created liberty interest at stake. Plaintiff alleges that defendant Calvo violated California Code of Regulations Title 15, but Plaintiff does not identity the specific regulation at issue or allege what it states. Moreover, Plaintiff fails to allege that he suffered any negative consequences because defendant Calvo served the report, and thus fails to allege that he suffered an atypical and significant hardship. The Court notes that Plaintiff alleges that the Rules Violation Report was ultimately dismissed.

Accordingly, the Court finds that Plaintiff fails to state a procedural due process claim against defendant Calvo.

G.   False Rules Violation Reports

The filing of a false Rules Violation Report by a prison official against a prisoner is not a per se violation of the prisoner's constitutional rights. See Muhammad v. Rubia, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), aff'd, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. As long as a prisoner is afforded procedural due process in the disciplinary hearing, allegations of a fabricated charge fail to state a claim under § 1983.") (citations omitted); Harper v. Costa, 2009 WL 1684599, at *2-3 (E.D. Cal., June 16, 2009), aff'd, 393 Fed. App'x 488 (9th Cir. 2010) ("Although the Ninth Circuit has not directly addressed this issue in a published opinion, district courts throughout California … have determined that a prisoner's allegation that prison

officials issued a false disciplinary charge against him fails to state a cognizable claim for relief under § 1983.").

There are, however, two ways that allegations that an inmate has been subjected to a false disciplinary report can state a cognizable civil rights claim: (1) when the prisoner alleges that the false disciplinary report was filed in retaliation for his exercise of a constitutional right; and (2) when the prisoner alleges that he was not afforded procedural due process in a disciplinary proceeding concerning the false report.  See Hines v. Gomez, 108 F.3d 265, 269 (9th Cir. 1997) ("[T]his court has reaffirmed that prisoners may still base retaliation claims on harms that would not raise due process concerns."); Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986) (holding that the filing of a false disciplinary charge against a prisoner is not actionable under § 1983 if prison officials provide the prisoner with procedural due process protections); Hanrahan v. Lane, 747 F.2d 1137, 1140-41 (7th Cir. 1984) ("[A]n allegation that a prison guard planted false evidence which implicates an inmate in a disciplinary infraction fails to state a claim for which relief can be granted where the procedural due process protections as required in *Wolff v. McDonnell* are provided.").

Plaintiff brings a claim against defendant Nunez-Ruiz based on the allegation that he lied on a Rules Violation Report.  However, as discussed above, Plaintiff fails to sufficiently allege that any defendant retaliated against him.  Plaintiff also fails to sufficiently allege that he was denied the procedural due process protections required by Wolff.  Accordingly, the Court finds that Plaintiff fails to state a claim based on the allegation that defendant Nunez-Ruiz lied on a Rules Violation Report.

### H.  Freedom of Expression/Right to Petition

The First Amendment provides that Congress shall make no law abridging the right of the people "to petition the Government for a redress of grievances."  U.S. Const. amend. I.  The right to petition the government is "cut from the same cloth as the other guarantees" in the First Amendment and is "an assurance of a particular freedom of expression."  McDonald v. Smith, 472 U.S. 479, 482 (1985).  However, the Petition Clause guarantees only that an individual may "speak freely and petition openly" and that he will be free from retaliation by the

government for doing so.  <u>Smith v. Arkansas State Highway Employees, Local 1315</u>, 441 U.S. 463, 465 (per curiam).  The First Amendment does not guarantee that there will be any government response to a petition or that the government will take any action regarding the relief demanded by the petitioner.  Specifically, the First Amendment does not impose an affirmative obligation on the government to consider, respond to, or grant any relief on a citizen's petition for redress of grievances.  <u>Id.</u>; <u>see also</u> <u>Apple v. Glenn</u>, 183 F.3d 477, 479 (6th Cir. 1999) ("A citizen's right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views."); <u>We the People Foundation, Inc. v. United States</u>, 485 F.3d 140, 141 (D.C. Cir. 2007) ("[T]he Petition Clause does not provide a right to a response or official consideration [of a citizen's grievance]."); <u>Trentadue v. Integrity Committee</u>, 501 F.3d 1215, 1237 (10th Cir. 2007) ("[T]he right to petition confers no attendant right to a response from the government."); <u>Hilton v. City of Wheeling</u>, 209 F.3d 1005, 1007 (7th Cir. 2000) ("[W]hile the government may not interfere with the right to petition, it need not grant the petition, no matter how meritorious it is.") (citations omitted).

It is not clear, but Plaintiff appears to be bringing a claim against defendant Keyfauver for a violation of his right to petition the government for a redress of grievances, which is "an assurance of a particular freedom of expression."  <u>McDonald</u>, 472 U.S. at 482.

There are no allegations suggesting that defendant Keyfauver prevented Plaintiff from filing a 602 appeal.  Plaintiff alleges that he did not receive a response to some 602 appeals and that he did not like the response he received to others, but as discussed above, not receiving a response or not liking the response received is insufficient to state a claim for violation of the right to petition the government.[4]  Additionally, as discussed above, Plaintiff fails to sufficiently allege that any defendant retaliated against him because he filed grievances.  Accordingly, the Court finds that Plaintiff fails to state a claim for violation of his First

---

[4] To the extent Plaintiff complains about defendant Keyfauver not following the proper procedures for processing his 602 appeals, as discussed in more detail below, Plaintiff is not entitled to a specific procedure and does not have a liberty interest in the processing of his 602 appeals.

Amendment right to freedom of expression/to petition the government.

I.   Equal Protection

The equal protection clause requires that persons who are similarly situated be treated alike.  City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985); Hartmann v. California Dep't of Corr. & Rehab., 707 F.3d 1114, 1123 (9th Cir. 2013); Furnace v. Sullivan, 705 F.3d 1021, 1030 (9th Cir. 2013); Shakur v. Schriro, 514 F.3d 878, 891 (9th Cir. 2008).  To state a claim, Plaintiff must show that Defendants intentionally discriminated against him based on his membership in a protected class, Hartmann, 707 F.3d at 1123 Furnace, 705 F.3d at 1030, Serrano v. Francis, 345 F.3d 1071, 1082 (9th Cir. 2003), Thornton v. City of St. Helens, 425 F.3d 1158, 1166-67 (9th Cir. 2005), Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir. 2001), or that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose, Engquist v. Oregon Department of Agr., 553 U.S. 591, 601-02 (2008), Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000), Lazy Y Ranch Ltd. v. Behrens, 546 F.3d 580, 592 (9th Cir. 2008), North Pacifica LLC v. City of Pacifica, 526 F.3d 478, 486 (9th Cir. 2008).

Inmates are not a protected class.  Webber v. Crabtree, 158 F.3d 460, 461 (9th Cir. 1998); Veenstra v. Idaho State Bd. of Correction, 785 F. App'x 390, 391 (9th Cir. 2019).

Plaintiff alleges that defendant Keyfauver violated his equal protection rights because he did not properly process Plaintiff's 602 appeals.  However, Plaintiff fails to sufficiently allege that defendant Keyfauver intentionally discriminated against him based on his membership in a protected class, or that Plaintiff was intentionally treated differently than similarly situated individuals without a rational relationship to a legitimate state purpose.  Accordingly, the Court finds that Plaintiff fails to state an equal protection claim against defendant Keyfauver.

J.   Processing of Appeals/Grievances

"[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates."  Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (alteration in original) (quoting Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see

1   also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of

2   appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d

3   641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on

4   prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a

5   protected liberty interest requiring the procedural protections envisioned by the Fourteenth

6   Amendment."  Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo.

7   1986).

8          Plaintiff alleges that defendant Keyfauver violated his due process rights because he did

9   not properly process Plaintiff's 602 appeals.  As Plaintiff does not have a liberty interest in the

10  processing of his 602 appeals, the Court finds that Plaintiff fails to state a claim based on his

11  allegations that his 602 appeals were not properly processed.[5]

12          K.  Conspiracy

13          To state a claim for conspiracy under section 1983, Plaintiff must show the existence of

14  an agreement or meeting of the minds to violate constitutional rights, Avalos v. Baca, 596 F.3d

15  583, 592 (9th Cir. 2010); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2001), and that an

16  "actual deprivation of his constitutional rights resulted from the alleged conspiracy," Hart v.

17  Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County,

18  Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in the

19  conspiracy need not know the exact details of the plan, but each participant must at least share

20  the common objective of the conspiracy.'"  Franklin, 312 F.3d at 441 (quoting United

21  Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir.1989)).

22  Additionally, Plaintiff must show that Defendants "conspired or acted jointly in concert and

23  that some overt act [was] done in furtherance of the conspiracy."  Sykes v. State of California,

24  497 F.2d 197, 200 (9th Cir. 1974).  "[M]ore than vague conclusory allegations are required to

25  state a [conspiracy] claim."  Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).

26          Plaintiff alleges that defendant Keyfauver conspired with defendants Nunez-Ruiz,

27  ──────────────

28          [5] However, a failure to correctly process Plaintiff's 602 appeals may be relevant and admissible to the
extent Defendants rely on a defense of non-exhaustion.

Calvo, and John Doe 3 to prevent any information regarding the May 6 incident from getting to Sacramento.  However, at most, Plaintiff provides vague and conclusory allegations. Accordingly, the Court finds that Plaintiff fails to state a conspiracy claim.

**IV.    CONCLUSION, RECOMMENDATIONS, AND ORDER**

The Court has screened the First Amended Complaint and finds that this action should proceed on the following claims: Plaintiff's Eighth Amendment excessive force claim against defendants Nunez-Ruiz, Calvo, John Doe 3 (a Correctional Officer), and Jane Doe 4 (a Nurse); Plaintiff's Eighth Amendment failure to protect claim against defendants Nunez-Ruiz and John Doe 3 (a Correctional Officer); and Plaintiff's claim for unwanted medical treatment in violation of the Fourteenth Amendment against defendant Jane Doe 4 (a Nurse).  The Court also finds that all other claims and defendants should be dismissed.

The Court will not recommend that further leave to amend be granted.  In the Court's prior screening order, the Court identified deficiencies in Plaintiff's complaint, provided Plaintiff with relevant legal standards, and provided Plaintiff with an opportunity to amend his complaint.  Plaintiff filed his First Amended Complaint with the benefit of the Court's screening order.  While Plaintiff cured some of the deficiencies identified by the Court, it appears that further leave to amend would be futile.

Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

1.  This case proceed on Plaintiff's Eighth Amendment excessive force claim against defendants Nunez-Ruiz, Calvo, John Doe 3 (a Correctional Officer), and Jane Doe 4 (a Nurse); Plaintiff's Eighth Amendment failure to protect claim against defendants Nunez-Ruiz and John Doe 3 (a Correctional Officer); and Plaintiff's claim for unwanted medical treatment in violation of the Fourteenth Amendment against defendant Jane Doe 4 (a Nurse); and

2.  All other claims be dismissed for failure to state a claim.

These findings and recommendations will be submitted to the United States district judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within twenty-one (21) days after being served with these findings and recommendations, Plaintiff

22

may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Additionally, IT IS ORDERED that the Clerk of Court is directed to assign a district judge to this case.

IT IS SO ORDERED.

Dated:   **September 14, 2022**                     /s/ Erica P. Grosjean

UNITED STATES MAGISTRATE JUDGE